1  Michael Montaño (Cal. Bar No. 282419)
   **GUERRA LLP**
2  345 California Street, Suite 600
   San Francisco, California 94104
3  mmontano@guerrallp.com
   (726) 336-7693
4

5  Frank Guerra (*Pro Hac Vice* Pending)
   **GUERRA LLP**
6  875 East Ashby Place, Suite 1200
   San Antonio, Texas 78212
7  fguerra@guerrallp.com
   (210) 447-0500
8

9  Clayton Smaistrla (*Pro Hac Vice* Pending)
   **SAUCIER & SMAISTRLA PLLC**
10 200 Concord Plaza Drive, Suite 750
   San Antonio, Texas 78216
11 clayton@s2lawfirm.com
   (210) 901-8112
12

13 *Attorneys for Plaintiffs*

14                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
15                    **OAKLAND DIVISION**

16 | ROBERTO DÍAZ DE LEÓN, GREGORY | Case No. _____ |
   | MCGRIFF, JOEL TRUJILLO, FREDERICK | |
17 | EVANS and CATHY EVANS, | **COMPLAINT** |
18 | *Plaintiffs*, | **CLASS ACTION** |
19 | | **DEMAND FOR JURY TRIAL** |
20 | v. | |
21 | SOLAR MOSAIC LLC, SOLAR MOSAIC, | |
   | INC., and DOES 1–10 | |
22 | *Defendants*. | |
23

24        Plaintiffs Roberto Díaz De León, Gregory McGriff, Joel Trujillo, and Frederick and Cathy

25 Evans, on behalf of themselves, all similarly situated individuals, and the public, bring this action

26 against Defendants Solar Mosaic, Inc., Solar Mosaic LLC, and Does 1 through 10 for violation of

27 the Truth in Lending Act, California Unfair Competition Law, California Consumer Legal

28 Remedies Act, Texas Deceptive Trade Practices Act, and common law of fraud, as set forth below.

## **INTRODUCTION**

1.    This dispute arises from the financing of residential solar electric power systems ("RSEPS" or "solar power systems") in California and Texas.

2.    Specifically, it relates to the sale of lending services and the extension of credit to consumers by Mosaic, the largest RSEPS lender in the United States.

3.    As explained more fully below, the solar power industry has grown tremendously in recent years, and a significant part of that growth is attributable to the installation of RSEPS.

4.    RSEPS are frequently marketed to consumers at their homes by door-to-door salespeople. These salespeople pitch the purchase, installation, and financing of RSEPS.

5.    The sales pitch has three economic components: lowering energy costs, reducing income taxes through government subsidy, and borrowing cheaply from friendly lenders.

6.    But, with respect to the defendant in this action, a lending company that provides consumer financing to homeowners purchasing RSEPS, the last is a lie.

7.    It is a lie because the defendant charges homeowners hidden interest, disguised as an undisclosed "dealer fee", that raises the effective cost of borrowing to predatory levels.

8.    Further, it is a lie upon which consumers rely when deciding to purchase, install, and finance RSEPS for their homes.

9.    Indeed, the defendant's misrepresentations to consumers regarding the costs of borrowing induce consumers to borrow.

10.    This action seeks to remedy this wrongdoing and provide justice to those who have been injured by the defendant's deceptive lending practices, as well as to the general public.

## **PARTIES**

11.    Plaintiff Roberto Díaz De Leon is a natural person. He resides at 652 Billow Drive, San Diego, California 92114. Mr. De Leon is a California citizen.

12.    Plaintiff Gregory McGriff is a natural person. He resides at 160 Creekview Drive, Vallejo, California 94591. Mr. McGriff is a California citizen.

13.    Plaintiff Joel Trujillo is a natural person. He resides at 712 Oscar Perez Avenue, El Paso, Texas 79932. Mr. Trujillo is a Texas citizen.

14. Plaintiff Frederick "Bill" Evans is a natural person. He resides at 11811 Greenwood Village, San Antonio, Texas 78249. Mr. Evans is a Texas citizen.

15. Plaintiff Cathy Evans is a natural person. She resides at 11811 Greenwood Village, San Antonio, Texas 78249. Mrs. Evans is a Texas citizen.

16. Bill and Cathy Evans are spouses and are referred to collectively herein as the "Evanses", "Mr. and Mrs. Evans", or "Evans and Evans".

17. All plaintiffs, collectively, are referred to herein as "Plaintiffs".

18. Defendant Solar Mosaic, Inc., is a Delaware corporation. Its principal place of business is 601 12th Street, Suite 325, Oakland, California 94607. Solar Mosaic, Inc.'s registered agent for service is CT Corporation System, 330 North Brand Boulevard, Glendale, California 91203. Solar Mosaic, Inc., is a California citizen and resident.

19. Defendant Solar Mosaic LLC is a Delaware limited liability company. Solar Mosaic LLC's principal place of business is 601 12th Street, Suite 325, Oakland, California 94607. Solar Mosaic LLC's registered agent for service is CT Corporation System, 330 North Brand Boulevard, Glendale, California 91203. Solar Mosaic LLC is a California citizen and resident.[1]

20. The sole owner of Solar Mosaic LLC's membership units is Mosaic Sustainable Finance Corporation. Mosaic Sustainable Finance Corporation is a Delaware corporation. Its principal place of business is 601 12th Street, Suite 325, Oakland, California 94607. Mosaic Sustainable Finance Corporation's registered agent for service is Julianne Spears, General Counsel, Solar Mosaic LLC, 601 12th Street, Suite 325, Oakland, California 94607. Mosaic Sustainable Finance Corporation is a California citizen and resident.

21. On information and belief, Solar Mosaic, Inc., merged with Solar Mosaic LLC in 2021. Accordingly, they are referred to collectively herein as "Mosaic" or "Defendant".

22. Defendant Does 1 through 10 (the "Doe Defendants") are the successor holders of

---

[1] Solar Mosaic LLC has registered "Mosaic" as its fictitious business name (aka "dba") in both California and Delaware.

1  Plaintiffs' loans whose identities are currently unknown to Plaintiffs.[2]

2        23.    All Defendants, collectively, are referred to herein as "Defendants".

3  **JURISDICTION**

4        24.    This Court has subject matter jurisdiction over Plaintiffs' TILA claims pursuant to

5  15 U.S.C. § 1641(e) and 28 U.S.C. § 1331. *See* U.S. Const. art. III, § 2.

6        25.    The Court has supplemental jurisdiction over Plaintiffs' state law claims because

7  they arise from the same event or transaction as Plaintiffs' TILA claims. *United Mine Workers v.*

8  *Gibbs*, 383 U.S. 715 (1966); *Siler v. Louisville & Nashville R.R.*, 213 U.S. 175 (1909).

9        26.    The Court has personal jurisdiction over Defendant because Defendant resides

10  within this District, purposefully directed its business activities toward this District, and has had

11  and continues to have substantial contacts with this District.

12        27.    This Court also has specific jurisdiction over Defendant because Plaintiffs' claims

13  for relief arise from and relate to illegal acts committed by Defendant within this District.

14  **VENUE**

15        28.    Because Defendant is a citizen of California and resides in a county that is within

16  the geographic boundaries of the Northern District of California, venue is proper in this District

17  pursuant to 28 U.S.C. §§ 1391(b)(1) and (c)(2).

18  **DIVISIONAL ASSIGNMENT**

19        29.    Assignment to the Oakland Division of the Northern District of California is

20  appropriate because a substantial part of the events or omissions giving rise to the claim occurred

21  in Alameda County, where the Oakland Division is located and where Defendants reside. *See* Civ.

22  L.R. 3-2(c), 3-5(b).

23  _____

24      [2] Under the Federal Trade Commission's Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 16 C.F.R. section 433.2, commonly known as the "Holder

25  Rule", Does 1 through 10 are liable to Plaintiffs for Mosaic's loan-related misconduct towards Plaintiffs. For further background on the Holder Rule, see U.S. Federal Trade Commission,

26  Commission Statement on the Holder Rule and Attorneys' Fees and Costs, January 18, 2022,

27  available at https://www.ftc.gov/system/files/documents/advisory_opinions/commission-statement-holder-rule-attorneys-fees-

28  costs/p124802_commission_statement_on_the_holder_rule_and_attorneys_fees_and_costs.pdf.

**I.   BACKGROUND**

30.   In recent years, an increasing number of homeowners have chosen to purchase, install, and finance RSEPS, which are solar photovoltaic ("solar PV") panels affixed to a roof or other on-premises structure to generate electricity and thereby reduce, eliminate, or invert household electric utility costs.[3]

31.   Indeed, according to the Solar Energy Industries Association, "[i]n the last decade alone, solar has experienced an average annual growth rate of 22%." Solar Industry Research Data, SEIA, https://www.seia.org/solar-industry-research-data (last visited May 29, 2024).[4]

32.   Growth in the home solar industry has been driven by many factors, including increasing consumer demand for clean energy and falling prices for solar PV panels.

33.   But the growth of the solar industry is also financially incentivized by the United States government through the provision of the Residential Clean Energy Credit ("RCEC").

34.   This tax credit currently allows a homeowner to take a credit of up to 30% of the cost of her RSEPS from her federal income tax obligations on a dollar-for-dollar basis. Residential Clean Energy Credit, IRS, https://www.irs.gov/credits-deductions/residential-clean-energy-credit (last visited May 29, 2024).[5]

35.   The RCEC may only be claimed for purchase and installation costs; it may not be

---

[3] Some utility providers only allow solar power system owners to reduce their bills to zero; others agree to purchase excess electrical energy produced by the homeowner, effectively augmenting overall utility capacity through the incorporation of what amounts to a distributed power generation network.

[4] In California, 13,904,267 homes are powered by solar (1,992,628 of those homes being powered by on-site RSEPS); in Texas, 2,677,486 homes are powered by solar (274,628 of those homes being powered by on-site RSEPS). Solar State By State, SEIA, https://www.seia.org/states-map (last visited May 29, 2024).

[5] Congress first passed the RCEC in 2009, allowing for a credit of up to 30% of the purchase and installation price up to $2000. In 2009, Congress eliminated the dollar amount cap altogether. Then, in 2020, Congress reduced the percentage that could be claimed to 26%. Finally, in 2022, Congress raised the percentage back to 30% through the passage of the Inflation Reduction Act. Absent further congressional action, that rate is set to continue through 2032.

claimed for borrowing costs, such as interest or loan origination fees. *Id.*

36. Further, under federal income tax regulations promulgated by the Internal Revenue Service ("IRS"), "the credit amount you receive can't exceed the amount you owe in tax." *Id.*

37. Still, the mere existence of the RCEC has created significant profit opportunities for solar power system financing companies, such as Mosaic.

38. Specifically, the existence of the RCEC has allowed Mosaic to close loans based, in part, on misrepresentations made to prospective borrowers by door-to-door salespeople regarding the extent to which such consumers would benefit from the RCEC.[6]

39. Often—and contrary to the actual IRS rules—such salespeople verbally represent to consumers that the consumers can claim a tax credit for the full amount of their purchase, known as the "contract price," and that the consumers can claim the RCEC irrespective of tax liability.

40. Mosaic's website, which is a form of marketing communication, likewise misrepresents consumer RCEC eligibility.

41. For example, Mosaic's website states that "a homeowner who finances an 8 kilowatt solar installation for $30,000 could see a tax liability reduction of $9,000 if the credit is 30%." Solar Mosaic, https://joinmosaic.com/how-the-federal-tax-credit-works/ (last visited May 29, 2024).

42. But that is untrue because the contract price includes undisclosed finance charges, discussed below, which are not RCEC-eligible.

43. It is also untrue because it fails to disclose anything about the impact of one's income tax obligations on RCEC eligibility.

44. Lenders like Mosaic also close loans by misrepresenting to prospective consumers the true costs of borrowing.

45. Specifically, Mosaic misrepresents the true cost of borrowing by presenting loan

---

[6] The door-to-door salespeople who pitch RSEPS to consumers typically work for solar power system sellers and installers, which are sometimes one and the same. These companies have standing business relationships with Mosaic pursuant to which they present Mosaic's loan proposals and agreements to consumers. Therefore, even if they are not Mosaic's employees, these door-to-door salespeople act as and are Mosaic's agents and representatives.

proposals and agreements to consumers that fail to disclose so-called "dealer fees."

46. Dealer fees are, nominally, payments that solar sellers and installers make to Mosaic as part of an RSEPS financing transaction.

47. These payments may be styled as "rebates" or "discounts" from solar sellers and installers to Mosaic or as fees charged for the privilege of offering the lender's loans.

48. But however they are styled, the existence, nature, and impact of dealer fees are never disclosed to borrowers. Indeed, they are affirmatively disguised.

49. Whereas the "contract price" for a solar power system is represented to consumers to be the amount charged for purchase and installation, it is actually the sum of those things, the dealer fee, and the sales commission.

50. Therefore, it is not the seller or installer but the consumer who actually pays the dealer fee.

51. Importantly, the amount of the dealer fee varies inversely with the interest rate that Mosaic discloses to consumers in its loan proposals and loan agreements.[7]

52. Therefore, <u>dealer fees are merely hidden finance charges</u>. Specifically, they are a form of hidden interest.[8]

53. Dealer fees are also charged up front because they are added to and included in the principal upon which interest will be assessed.

54. Outrageously, these concealed fees account for up to at least 34.75% of the contract

---

[7] The disclosed-interest-rate-to-dealer-fee ratio is determined by a formula that Mosaic created and enforces. RSEPS salespersons and installation companies have no authority to deviate from the results of that formula, except, on information and belief, within narrow, formula-derived bands that Mosaic pre-determines. The disclosed-interest-rate-to-dealer-fee ratios that RSEPS salespersons must use are displayed in a chart that Mosaic provides to business partners, including RSEPS salespersons and installation companies, but never to consumers.

[8] The definition of "interest" is codified in both California and Texas: "'Interest' means compensation for the use, forbearance, or detention of money." TEX. FINANCE CODE § 301.002(a)(4). "Interest is the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money." CAL. CIV. CODE § 1915. These definitions are materially identical.

price on Mosaic-financed RSEPS.

55.     The means by which door-to-door salespeople ensnare consumers on Mosaic's behalf are equally unsavory.

56.     Highly trained to impose high-pressure sales tactics, they often make exaggerated claims about the advantages of RSEPS and of Mosaic financing, and they frequently appeal to fear of rising energy costs or to guilt about climate change.

57.     These door-to-door salespeople also use form contracts prepared by Mosaic from which they have no discretion to deviate and over which consumers may not negotiate.

58.     As a result, these home-solicitation experts close sales with exceptional efficiency, presenting consumers with Mosaic loan documents on an electronic touchscreen tablet.

59.     A signature here, a tap there, and now you, too, can pay punishingly high interest—without ever even knowing it.

## II.     PLAINTIFFS' EXPERIENCES

### A.     MR. DE LEÓN'S EXPERIENCE

60.     Roberto De León was solicited at his home on or about February 7, 2022, to purchase, install, and finance a solar power system for his residence.

61.     The salesman who solicited De León was Solar Mosaic LLC's employee, contractor, agent, or representative.

62.     As a part of his sales pitch, the Mosaic representative made, on behalf of Mosaic, all of the following representations:

1.     that purchasing and installing a solar power system would lower De León's energy costs;

2.     that De León would be eligible to receive a 30% income tax credit against the full amount of their solar power system contract price;

3.     that the contract price was the price to purchase and install a solar power system for De León's home;

4.     that the contract price would be $19,614;

5.     that the costs of credit were separate and distinct from the contract price;

and

6.      that Mosaic could extend credit to De León at low cost.

63.      In reliance on these and other representations, De León agreed in principle to obtain a loan from Mosaic to purchase a solar power system for his home.[9]

64.      To consummate De León's purchase, the Mosaic representative presented several important documents to De León on a handheld device with a touchscreen electronic display (an "electronic tablet").

65.      These documents included a Truth in Lending Disclosure Statement (also styled the "Federal Truth in Lending Act ('TILA') Disclosure"), and a Home Solar Loan Agreement, both generated by Mosaic.

66.      The TILA Disclosure indicated an APR of 0.99%.

67.      The Mosaic representative secured De León's electronic signature on these loan documents using the aforementioned electronic tablet, including through the use of software-based click-through processes.

68.      On information and belief, the software used for this purpose is proprietary to Mosaic or specifically reviewed and authorized by Mosaic.

69.      Mosaic's documents fail to disclose that a significant portion of the contract price communicated to De León is not attributable to the purchase or installation of his RSEPS but to a dealer fee. (As explained above, these dealer fees are a form of disguised interest.)

70.      The dealer fee on De León's loan accounted for at least 34.75% of the contract price charged to him, that is, at least $6,815.87.

71.      Thus, Mosaic misrepresented to De León the basis of the contract price, misrepresented the true interest rate, misrepresented the APR, and misrepresented the amount De León could take as a tax credit.

72.      Mosaic made these misrepresentations and omissions knowingly and intentionally and with the purpose of inducing De León to rely on same in evaluating, accepting, and paying the

---

[9] DeLeón's RSEPS was to be installed by Bright Planet Solar. Bright Panel Solar is not a party to this litigation.

loan from Mosaic to De León.

73.     De León did so rely.

74.     De León has made and continues to make timely payments under the terms of his loan agreement with Mosaic.

**B.     MR. MCGRIFF'S EXPERIENCE**

75.     Gregory McGriff was solicited at his home on or about June 14, 2021, to purchase, install, and finance a solar power system for his residence.

76.     The salesman who solicited McGriff, Germaine,[10] was Solar Mosaic, Inc.'s employee, contractor, agent, or representative.

77.     As a part of his sales pitch, the Mosaic representative made, on behalf of Mosaic, all of the following representations:

  1.     that purchasing and installing a solar power system would lower McGriff's energy costs;

  2.     that McGriff would be eligible to receive a 30% income tax credit against the full amount of their solar power system contract price;

  3.     that the contract price was the price to purchase and install a solar power system for McGriff's home;

  4.     that the contract price would be $26,864;

  5.     that the costs of credit were separate and distinct from the contract price; and

  6.     that Mosaic could extend credit to McGriff at low cost.

78.     In reliance on these and other representations, McGriff agreed in principle to obtain a loan from Mosaic to purchase a solar power system for his home.[11]

79.     To consummate McGriff's purchase, the Mosaic representative presented several

---

[10] McGriff is currently unable to recall Germaine's last name, and Germaine's last name is within Mosaic's knowledge, possession, or control.

[11] McGriff's RSEPS was to be installed by Bright Planet Solar. Bright Planet Solar is not a party to this litigation.

important documents to McGriff on a handheld electronic tablet.

80.     These documents included a Truth in Lending Disclosure Statement (also styled the "Federal Truth in Lending Act ('TILA') Disclosure"), and a Home Solar Loan Agreement, both generated by Mosaic.

81.     The TILA Disclosure indicated an APR of 2.99%.

82.     The Mosaic representative secured McGriff's electronic signature on these loan documents using the aforementioned electronic tablet, including through the use of software-based click-through processes.

83.     Mosaic's documents fail to disclose that a significant portion of the contract price communicated to McGriff is not attributable to the purchase or installation of his RSEPS but to a dealer fee.

84.     The dealer fee on McGriff's loan accounted for at least 34.75% of the contract price charged to him, that is, at least $13,380.37.

85.     Thus, Mosaic misrepresented to McGriff the basis of the contract price, misrepresented the true interest rate, misrepresented the APR, and misrepresented the amount McGriff could take as a tax credit.

86.     Mosaic made these misrepresentations and omissions knowingly and intentionally and with the purpose of inducing McGriff to rely on same in evaluating, accepting, and paying the loan from Mosaic to McGriff.

87.     McGriff did so rely.

88.     McGriff has made and continues to make timely payments under the terms of his loan agreement with Mosaic.

**C.     MR. TRUJILLO'S EXPERIENCE**

89.     Joel Trujillo was solicited at his home on or about May 10, 2021, to purchase, install, and finance a solar power system for his residence.

90.     The salesman who solicited Trujillo, Ivan Rentería, was Solar Mosaic, Inc.'s employee, contractor, agent, or representative.

91.     As a part of his sales pitch, the Mosaic representative made, on behalf of Mosaic,

all of the following representations:

    7.     that purchasing and installing a solar power system would lower Trujillo's energy costs;

    8.     that Trujillo would be eligible to receive a 30% income tax credit against the full amount of their solar power system contract price;

    9.     that the contract price was the price to purchase and install a solar power system for Trujillo's home;

    10.    that the contract price would be $23,725;

    11.    that the costs of credit were separate and distinct from the contract price; and

    12.    that Mosaic could extend credit to Trujillo at low cost.

92.    In reliance on these and other representations, Trujillo agreed in principle to obtain a loan from Mosaic to purchase a solar power system for his home.[12]

93.    To consummate Trujillo's purchase, the Mosaic representative presented several important documents to Trujillo on a handheld electronic tablet.

94.    These documents included a Truth in Lending Disclosure Statement (also styled the "Federal Truth in Lending Act ('TILA') Disclosure"), and a Loan Agreement, both generated by Mosaic.

95.    The TILA Disclosure indicated an APR of 1.99%.

96.    The Mosaic representative secured Trujillo's electronic signature on these loan documents using the aforementioned electronic tablet, including through the use of software-based click-through processes.

97.    Mosaic's documents fail to disclose that a significant portion of the contract price communicated to Trujillo is not attributable to the purchase or installation of his RSEPS but to a dealer fee.

98.    The dealer fee on Trujillo's loan accounted for at least 34.75% of the contract price

---

[12] McGriff's RSEPS was to be installed by Bright Planet Solar. Bright Planet Solar is not a party to this litigation.

1   charged to him, that is, at least $8,244.44.

2   99.   Thus, Mosaic misrepresented to Trujillo the basis of the contract price,
3   misrepresented the true interest rate, misrepresented the APR, and misrepresented the amount
4   Trujillo could take as a tax credit.

5   100.   Mosaic made these misrepresentations and omissions knowingly and intentionally
6   and with the purpose of inducing Trujillo to rely on same in evaluating, accepting, and paying the
7   loan from Mosaic to Trujillo.

8   101.   Trujillo did so rely.

9   102.   Trujillo has made and continues to make timely payments under the terms of his
10  loan agreement with Mosaic.

11  **D.   THE EVANSES' EXPERIENCE**

12  103.   Bill Evans and Cathy Evans were solicited at their home on or about June 4, 2023
13  to purchase, install, and finance a solar power system for their residence.

14  104.   The salesman who solicited the Evanses, Josh Wells, was Solar Mosaic LLC's
15  employee, contractor, agent, or representative.

16  105.   As a part of his sales pitch, the Mosaic representative made, on behalf of Mosaic,
17  all of the following representations:

18          1.   that purchasing and installing a solar power system would lower the
19               Evanses' energy costs;

20          2.   that the Evanses would be eligible to receive a 30% income tax credit
21               against the full amount of their solar power system contract price;

22          3.   that the contract price was the price to purchase and install a solar power
23               system for the Evanses' home;

24          4.   that the contract price would be $43,373;

25          5.   that the costs of credit were separate and distinct from the contract price;
26               and

27          6.   that Mosaic could extend credit to the Evanses at low cost.

28  106.   In reliance on these and other representations, the Evanses agreed in principle to

obtain a loan from Mosaic to purchase a solar power system for their home.[13]

107. To consummate the Evanses' purchase, the Mosaic representative presented several important documents to the Evanses on a handheld electronic tablet.

108. These documents included a Truth in Lending Disclosure Statement (also styled the "Federal Truth in Lending Act ('TILA') Disclosure"), and a Home Solar Loan Agreement, both generated by Mosaic.

109. The TILA Disclosure indicated an APR of 4.58%.

110. The Mosaic representative secured the Evanses' electronic signatures on these loan documents using the aforementioned electronic tablet, including through the use of software-based click-through processes.

111. Mosaic's documents fail to disclose that a significant portion of the contract price communicated to the Evanses is not attributable to the purchase or installation of their RSEPS but to a dealer fee.

112. The dealer fee on the Evanses' loan accounted for at least 29.85% of the contract price charged to them, that is, at least $12,946.84.

113. Thus, Mosaic misrepresented to the Evanses the basis of the contract price, misrepresented the true interest rate, misrepresented the APR, and misrepresented the amount the Evanses could take as a tax credit.

114. Mosaic made these misrepresentations and omissions knowingly and intentionally and with the purpose of inducing the Evanses to rely on same in evaluating, accepting, and paying the loan from Mosaic to the Evanses.

115. The Evanses did so rely.

116. The Evanses have made and continue to make timely payments under the terms of their loan agreement with Mosaic.

III. **INJURY TO PLAINTIFFS**

117. Plaintiffs were concretely injured by Defendant's acts and omissions because, *inter*

---

[13] The Evanses' RSEPS was to be installed by RGV Solar. RGV Solar is not a party to this litigation.

*alia*, they resulted in (i) monetary payments from Plaintiffs to Defendants to which Defendants were not entitled and (ii) monetary obligations from Plaintiffs to Defendants that Plaintiffs would not have accepted had they been fully and accurately disclosed.

**CLASS ACTION ALLEGATIONS**

118.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23 ("Rule 23").

119.    The proposed classes are defined as follows:

    1.    all persons in the United States who received a loan from Mosaic within the applicable statute of limitations to finance a residential solar energy power system ("Nationwide Class");

    2.    all persons in California who received a loan from Mosaic within the applicable statute of limitations to finance a residential solar energy power system ("California Subclass");

    3.    all persons in Texas who received a loan from Mosaic within the applicable statute of limitations to finance a residential solar energy power system ("Texas Subclass").

120.    Collectively, the Nationwide Class, California Subclass, and Texas Subclass shall be referred to as the "Class".

121.    Excluded from the Class are (i) Defendants and Defendants' subsidiaries and affiliates; (ii) Defendants' officers, directors, and employees; (iii) entities in which Defendants have a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

122.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and to add subclasses before this Court determines whether certification is appropriate.

123.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

124.    As to numerosity: The parties are sufficiently numerous such that joinder is

impracticable. Upon information and belief, and subject to discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiffs.

125. As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual Class members because Defendant has acted or failed to act on grounds generally applicable to the Class. Such common legal or factual questions include but are not limited to: (i) whether Defendant engaged in the conduct alleged herein; (ii) whether Defendant's conduct was deceptive, (iii) whether Defendant's conduct caused Class members harm; (iv) whether Defendant's conduct violated state consumer protection laws; (v) the appropriate measure of damages; and (vi) whether Plaintiffs and the Class are entitled to declaratory relief, injunctive relief, restitution, rescission, or a combination of these.

126. As to typicality: Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiffs and absent Class members are substantially the same because the challenged practices are uniform for Plaintiffs and Class members. Plaintiffs specifically allege that Mosaic's TILA Disclosures and Home Solar Loan Agreements are uniform for Plaintiffs and Class members in all material respects, including but not limited to their failure to disclose an accurate APR and failure to disclose dealer fees. Further, the relationship between disclosed interest rate and dealer fee is determined according to class-wide formulae set by Mosaic, as revealed by the company's own internal documents setting forth tables of interest rates and dealer fees in relation to one another. Accordingly, in pursuing their own self-interest in litigating the claims, Plaintiffs will also serve the interests of the Class.

127. As to adequacy: Each Plaintiff is a more than adequate representative of the Class pursuant to Rule 23 in that each Plaintiff received a loan from Mosaic and has suffered damages

because of Defendant's deceptive practices. Additionally, (i) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated; (ii) Plaintiffs have retained competent counsel experienced in the prosecution of class actions; (iii) there is no conflict of interest between Plaintiffs and the unnamed members of the Class; (iv) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and (v) Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and address the legal issues associated with this type of litigation.

128. As to predominance: The matter is properly maintained as a class action under Rule 23 because the common questions of law and fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.

129. As to superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter pursuant to Rule 23 because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and Class members to seek individual redress for Defendant's wrongful conduct.

130. Additionally, the Class is numerous enough to render joinder of all members or the maintenance of separate suits impracticable. Even if any individual person or group of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive resolution by a single court. Further, the difficulties likely to be encountered in the management of this action as a class action are minimal.

131. By contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party or parties opposing the Class and would lead to repetitious trials of many common questions of law and fact.

132. Plaintiffs know of no difficulty in the management or maintenance of this action that would preclude its maintenance as a class action. But absent a class action, Plaintiffs and Class

members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

133. For all these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

134. As stated above, Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

135. All conditions precedent to bringing this action have been satisfied, waived, or both.

## CLAIMS FOR RELIEF

## I. VIOLATION OF THE TRUTH IN LENDING ACT (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

136. Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully restated here.

137. Mosaic's conduct described herein violates the Truth in Lending Act, codified at 15 U.S.C. § 1601 *et seq*. and implemented by Regulation Z, 12 C.F.R. § 1026.

138. TILA imposes strict liability. Plaintiffs need not prove that Mosaic intentionally or negligently failed to comply with TILA but only that Mosaic's practices did violate TILA.

139. TILA exists to ensure "the informed use of credit." 15 U.S.C. § 1601(a). Per the statute:

> The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter *to assure a meaningful disclosure of credit terms* so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and *to protect the consumer against inaccurate and unfair credit billing* and credit card practices.

*Id.* (emphases supplied).

140. Regulation Z affirms the statute's purpose: "The purpose of this part is to promote the informed use of consumer credit by requiring disclosures about its terms and cost . . . ." 12 C.F.R. § 1026.1(a).

141. TILA specifically requires disclosure of the following information to consumers:

(i) the amount financed, 15 U.S.C. § 1638(a)(2)(A), 12 C.F.R. § 1026.18(b); (ii) an itemization of the amount financed or option to obtain same, 15 U.S.C. § 1638(a)(2)(B), 12 C.F.R. § 1026(c); (iii) the finance charge, 15 U.S.C. § 1638(a)(3), 12 C.F.R. § 1026.18(d); (iv) the annual percentage rate ("APR"), 15 U.S.C. § 1638(a)(4), 12 C.F.R. § 1026.18(e); and (v) a total of payments, *i.e.*, "[t]he sum of the amount financed and the finance charge," 15 U.S.C. § 1638(a)(5), 12 C.F.R. § 1026.18(h).

142.    Finance charges are further defined as follows:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 1026.4(a). *See* 15 U.S.C. § 1605(a) (defining "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit").

143.    APR is further defined as "a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made." 12 C.F.R. § 1026.22 (implementing 15 U.S.C. § 1606). TILA and Regulation Z also set forth standards for the accurate calculation of APR. *Id.*

144.    These disclosures must be made "clearly and conspicuously, in accordance with regulations of the Bureau [of Consumer Financial Protection]," 15 U.S.C. § 1632(a), which in turn has required that these disclosures be made "clearly and conspicuously *in writing*", 12 C.F.R. § 1026.17(a)(1) (emphasis supplied).

145.    By hiding dealer fees within an artificially inflated contract price, Mosaic's disclosure statements issued in conjunction with the consumer credit transactions subject of this pleading violated TILA and Regulation Z because they (i) fail to itemize accurately the amount financed or provide the option for consumers to obtain more detailed itemizations, (ii) fail to disclose all finance charges, and (iii) misrepresent the APR by equating it with an "interest rate" while failing to reflect the amount of the dealer fee in the APR. That is, Mosaic fails to make the "meaningful disclosure of credit terms" that TILA requires. *See* 15 U.S.C. § 1601(a).

146.    Mosaic's disclosures also violate TILA and Regulation Z by failing to make accurate and transparent disclosures in writing.

## II.    VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *ET SEQ.* (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

147.    Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully restated here.

148.    Mosaic's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq.*

149.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California state legislature framed the UCL's substantive provisions in broad, sweeping language.

150.    The UCL imposes strict liability. Plaintiffs need not prove that Mosaic intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices but only that such practices occurred.

151.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

152.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

153.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

154.    Mosaic committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by misrepresenting the terms of its RSEPS loans.

155.    Defendants' acts and practices offend an established public policy of truthful advertising in the marketplace and constitute immoral, unethical, oppressive, and unscrupulous

activities that are substantially injurious to consumers.

156. The harm to Plaintiffs and the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to the misleading and deceptive conduct described herein that Defendants could have adopted to further its legitimate business interests.

157. Defendants' conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiffs' First Claim for Relief, above, Mosaic's conduct violated TILA and Regulation Z, and as detailed in Plaintiffs' Third Claim for Relief, below, Mosaic's conduct also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq*.

158. Mosaic's business practices have misled Plaintiffs and the proposed Class and, unless enjoined, will continue to mislead them in the future.

159. Plaintiffs relied on Defendant's misrepresentations in choosing to borrow from Defendant.

160. By falsely marketing the terms of its loans in loan proposals and loan agreements, and by failing to disclose dealer fees, Mosaic deceived Plaintiffs and Class members into making purchases and carrying debt they otherwise would not make or carry.

161. As a direct and proximate result of Mosaic's unfair, fraudulent, and unlawful practices, Plaintiffs and Class members suffered and will continue to suffer actual damages. Defendants' fraudulent conduct is ongoing and presents a continuing threat to Plaintiffs and Class members that they will be deceived. Plaintiffs desire to conduct further business with Mosaic but cannot rely on Mosaic's representations unless an injunction is issued.

162. As a result of its unfair, fraudulent, and unlawful conduct, Mosaic has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

163. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

164. Plaintiffs have no adequate remedy at law in part because Mosaic's conduct is continuing. Plaintiffs therefore seek an injunction on behalf of the general public to prevent Mosaic from continuing to engage in the deceptive and misleading practices described herein.

## III. VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, *ET SEQ.* (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

165. Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully restated here.

166. This cause of action is brought pursuant to the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq.*

167. Plaintiffs and each member of the proposed Class are "consumers" as defined by California Civil Code section 1761(d).

168. RSEPS purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code section 1761(a).

169. Mosaic's provision of credit to Plaintiffs and the Class is a "service" within the meaning of California Civil Code section 1761(b).

170. Thus, Mosaic's provision of credit to Plaintiffs and the Class was "furnished in connection with the sale or repair of goods." *See id.*

171. Defendants' provision of credit to Plaintiffs and the Class were "transactions" within the meaning of California Civil Code section 1761(e), as were the purchase and installation of the RSEPS that Mosaic financed.

172. Defendants' credit offerings were presented to Plaintiffs and the Class by means of "home solicitation" within the meaning of California Civil Code section 1761(h).

173. Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in and did result in the sale of Mosaic's financial services: (i) "[r]epresenting that . . . services have . . . characteristics . . . that they do not have," Cal. Civ. Code § 1770(a)(5); (ii) "[a]dvertising goods or services with intent not to sell them as advertised,"

Cal. Civ. Code § 1770(a)(9); (iii) with respect to interest rates, "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," Cal. Civ. Code § 1770(a)(13); (iv) with respect to tax credits, "[r]epresenting that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction", Cal. Civ. Code § 1770(a)(17); and (v) "[a]dvertising, offering for sale, or selling a financial product that is illegal under state or federal law," Cal. Civ. Code § 1770(a)(26).

174. Specifically, as alleged herein, Mosaic has misrepresented and continues to misrepresent the terms of its loans by failing to disclose the existence or amount of the dealer fees it secretly charges consumers.

175. Mosaic has directed and does direct these misrepresentations at consumers before purchase through marketing communications provided through home solicitations.

176. Mosaic has directed and does direct these misrepresentations at consumers after purchase through the loan-servicing documents it provides to consumers.

177. At no time does Mosaic disclose the true cost of borrowing to consumers; instead, it repeatedly conceals and misrepresents this material information, including the existence and amount of the dealer fee.

178. Mosaic continues to violate the CLRA and continues to injure the public by misleading consumers about the terms of its solar power system financing services. Accordingly, Plaintiffs seek injunctive relief on behalf of the general public to prevent Mosaic from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiffs, the Class members, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

179. In accordance with California Civil Code section 1780(a), Plaintiffs and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

180. Pursuant to section 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant in writing by certified mail of the particular violations of section 1770 of the CLRA and demanded

that it both rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiffs' letter or fails to agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within thirty days of the date of written notice, as proscribed by section 1782, Plaintiffs will move to amend their Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate, against Defendant. However, as to this cause of action, at this time, Plaintiffs seek only injunctive relief.

IV. **FALSE AND MISLEADING ADVERTISING, BUS. & PROF. CODE § 17500, *ET SEQ.* (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)**

181. Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully restated here.

182. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to perform services . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any . . . corporation to so make or disseminate or cause to be so made or so disseminated any such statement as part of a plan or scheme with the intent not to sell . . . those services . . . as so advertised."

183. Defendants' material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

184. The California FAL also provides that "[a]ny advertisement . . . soliciting the purchase . . . of a product or service . . . that requires, as a condition of sale, the purchase . . . of a different product or service . . . shall conspicuously disclose in the advertisement the price of all those products or services." CAL. BUS. & PROF. CODE § 17509.

185. Mosaic's relevant loan proposals and loan documents, which advertise its financial

services, require, as a disclosed condition of sale, the purchase of a solar power system and, as an undisclosed condition of sale, the purchase and payment of a dealer fee.

186. Defendants' material misrepresentations and omissions alleged herein violate Business and Professions Code section 17509.

187. Defendants knew or should have known that their misrepresentations and omissions were false, deceptive, and misleading.

188. Pursuant to Business and Professions Code sections 17203, 17500, and 17509, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their deceptive practices.

189. Further, Plaintiffs request an order awarding Plaintiffs and Class members restitution of the money wrongfully acquired by Defendants by means of said misrepresentations.

190. Additionally, Plaintiffs and the Class members seek an order requiring Defendants to pay attorneys' fees pursuant to California Civil Code section 1021.5.

## V. VIOLATION OF TEXAS'S DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT, TEX. BUS. & COM. CODE § 17.41 ET SEQ. (ON BEHALF OF PLAINTIFFS TRUJILLO, EVANS, AND EVANS AND THE TEXAS SUBCLASS)

191. Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully restated here.

192. This claim for relief is brought pursuant to the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41 *et seq.*

193. The DTPA makes unlawful all "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a).

194. Plaintiffs and each member of the proposed Class are "consumers" as defined by the DTPA. Tex. Bus. & Com. Code § 17.45(4).

195. RSEPS purchased by Plaintiffs and the Class are "goods" within the meaning of Texas Business and Commerce Code § 17.45(1).

196. Mosaic's provision of credit to Plaintiffs and the Class is a "service" within the

meaning of Texas Business and Commerce Code § 17.45(2).

197.     Thus, Mosaic's provision of credit to Plaintiffs and the Class was "furnished in connection with the sale or repair of goods." *See id.*

198.     Defendant violated and continues to violate the DTPA by engaging in the following practices proscribed by Texas Business and Commerce Code § 17.46 in transactions with Plaintiffs and the Class which were intended to result in and did result in the sale of Mosaic's financial services: (i) "advertising goods or services with intent not to sell them as advertised," Tex. Bus. & Com. Code § 17.46(b)(9); (ii) with respect to interest rates, "making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions," Tex. Bus. & Com. Code § 17.46(b)(11); (iii) with respect to tax credits, "representing that an agreement confers or involves rights . . . which it does not have or involve, or which are prohibited by law," Tex. Bus. & Com. Code § 17.46(b)(12); and (iv) with respect to the dealer fees, "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," Tex. Bus. & Com. Code § 17.46(b)(24).

199.     Specifically, as alleged herein, Mosaic has misrepresented and continues to misrepresent the terms of its loans by failing to disclose the existence or amount of the dealer fees it secretly charges consumers.

200.     Mosaic has directed and does direct these misrepresentations at consumers before purchase through marketing communications provided through home solicitations.

201.     Mosaic has directed and does direct these misrepresentations at consumers after purchase through the loan-servicing documents it provides to consumers.

202.     At no time does Mosaic disclose the true cost of borrowing to consumers; instead, it repeatedly conceals and misrepresents this material information, including the existence and amount of the dealer fee.

203.     Plaintiffs and each member of the Texas Subclass relied on Mosaic's deceptive trade practices to their detriment. *See* TEX. BUS. & COM. CODE § 17.50(a)(1)(B).

204.    Mosaic's acts were a producing cause of Plaintiffs' and the Texas Subclass's damages.

205.    Mosaic's conduct was unconscionable. *See* TEX. BUS. & COM. CODE § 17.50(a)(3).

206.    Mosaic's conduct was knowing and intentional. *See* TEX. BUS. & COM. CODE § 17.50(b)(1).

207.    All notices required by the DTPA have been given. *See* TEX. BUS. & COM. CODE § 17.501, § 17.505.

## VI.    FRAUD (ON BEHALF OF PLAINTIFFS DE LEÓN AND MCGRIFF AND THE CALIFORNIA SUBCLASS)

208.    Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully restated here.

### A.    FRAUD, GENERALLY

209.    The nature of "fraud" and "deceit" are codified. CAL. CIV. CODE §§ 1752, 1709, and 1710 (2023). The elements of fraud are "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal. 4th 951, 974 (internal quotation marks omitted). Further, "'false representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered.'" *Id.* (quoting *Yellow Creek Logging Corp. v. Dare* (1963) 216 Cal. App. 2d 50, 55).

### B.    FRAUDULENT INDUCEMENT

210.    Fraudulent inducement is a type of common-law fraud.

211.    Fraudulent inducement "occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Hinesley v. Oakshade Town Center*, 135 Cal. App. 4th 289, 294-95 (Cal. Ct. App. 2005) (internal quotations omitted).

### C.    FRAUD BY CONCEALMENT OR OMISSION

212.    Fraud by concealment or omission typically arises when there is a fiduciary or

confidential relationship between the parties.

213.    "[T]he elements of an action for fraud and deceit based on a concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d 874].

### D.    FRAUD BY NON-DISCLOSURE

214.    Fraud by non-disclosure can also occur when a duty to disclose arises from the relationship between the parties, such as between a buyer and seller.

215.    "In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to the defendant, and defendant knows they are not known or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from a plaintiff." *Warner Constr. Corp. v. L.A.* (1970) 2 Cal. 3d 285, 295.

### E.    DEFENDANT'S CONDUCT CONSTITUTES FRAUDULENT INDUCEMENT, FRAUD BY OMISSION, AND FRAUD BY NON-DISCLOSURE

216.    As alleged herein, Mosaic intentionally and knowingly misrepresented the terms of its loans to Plaintiffs and each member of the Class, *inter alia*, by concealing the existence, nature, or extent of dealer fees and by inaccurately calculating APR, thus concealing the true cost of borrowing.

217.    Mosaic also intentionally and knowingly misrepresented to Plaintiffs and each member of the Class the tax benefits that borrowers could claim as a result of their purchases and

consumer financing.

218.     Mosaic had a duty to make accurate representations to Plaintiffs and each member of the Class concerning its loans, including the costs of said credit, and not to make promises, including those related to tax benefits, known to it to be false.

219.     This duty arises formally under both TILA and other laws, but even if this duty did not arise formally under TILA and other laws, it arises from the relationship between the parties and their unequal access to truthful information about the nature of Mosaic's loans, which was not available to Plaintiffs and the Class but was instead in Mosaic's sole possession.

220.     Mosaic's misrepresentations were material to the contracts at issue in this action and to their formation. Plaintiffs and each member of the Class relied on Mosaic's representations, which were intended to and did have the effect of causing Plaintiffs and each member of the Class to accept Mosaic's loan offers and, consequently, suffer injury.

221.     The facts that Mosaic failed to disclose to Plaintiffs and each member of the Class materially qualified the facts Mosaic did disclose and rendered Mosaic's disclosures likely to mislead.

222.     Plaintiffs and each member of the Class were ignorant of the facts Mosaic failed to disclose and actively concealed, and Plaintiffs had no opportunity to discover the truth.

223.     Mosaic intended to induce Plaintiffs and each member of the Class to rely on Mosaic's misrepresentations and omissions in evaluating and accepting Mosaic's loan proposals.

224.     But for Mosaic's misrepresentations, failures to disclose, concealment, and omissions, Plaintiffs and each member of the Class would not have entered into a loan agreement with Mosaic because they would have understood Mosaic's loan terms to be predatory.

225.     By these acts and omissions, Mosaic has committed fraud by non-disclosure and fraud by omissions or concealment and fraudulently induced Plaintiffs and each member of the Class to enter into contracts that they otherwise would not have entered.

## VII.     NEGLIGENT MISREPRESENTATION (ON BEHALF OF PLAINTIFFS DE LEÓN AND MCGRIFF AND THE CALIFORNIA SUBCLASS)

226.     Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully

restated here.

227. Plaintiffs plead this seventh claim for relief in the alternative to their sixth claim for relief.

228. Negligent misrepresentation occurs when (i) the defendant makes false statements, honestly but without reasonable grounds believing that they are true, *Bily v. Arthur Young & Co.* (1992) 3 Cal. 4th 370, 407, (iii) the defendant intends to induce reliance on the false statements, *SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal. App. 5th 146, 15, (iii) reliance on the false statements by the plaintiff was justifiable, *id.*, and (iv) the plaintiff was damaged as a result of such reliance, *id.*

229. Mosaic made false statements, *i.e.*, representations by, *inter alia*, presenting Plaintiffs and the Class with putative interest rates that failed to account for dealer fees and presenting APRs that failed to account for the real rate of interest.

230. These statements were made in the course of Mosaic's business and in the course of a transaction in which it has a pecuniary interest because the company's business is making loans, such as those made to Plaintiffs and the Class, and Mosaic generates financial revenue from same.

231. Further, Mosaic made these statements for the purpose of inducing Plaintiffs and the Class to rely on them in evaluating and accepting the loans that Mosaic offered.

232. Plaintiffs were justified in relying on Mosaic's statements because, *inter alia*, consumers reasonably expect that creditors comply with all laws and regulations to which such creditors are bound and reasonably expect that the terms contained in a written contract are truthful.

233. If Mosaic was not aware that its representations were false, then it was negligent in asserting them as true (and thereby making a false statement) because Mosaic lacked a reasonable basis for believing them to be true and failed to exercise reasonable care or competence in communicating accurate and truthful information.

234. Mosaic lacked a reasonable basis for believing its statements to be true because its statements are inconsistent with its practices and internal documentation.

235. Mosaic failed to exercise reasonable care or competence because any reasonably

careful or competent lender would have investigated and disclosed its own documented practices and avoided communicating untruthfully.

236.    As alleged herein, Plaintiffs and the Class were injured and suffered pecuniary loss, *i.e.*, were damaged, as a result of their reliance on Mosaic's negligent and false or inaccurate representations.

237.    Accordingly, Mosaic has committed negligent misrepresentation and is liable to Plaintiffs and the Class for same.

## VIII.    FRAUD (ON BEHALF OF PLAINTIFFS TRUJILLO, EVANS, AND EVANS AND THE TEXAS SUBCLASS)

238.    Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully restated here.

### A.    FRAUD, GENERALLY

239.    The elements of fraud and fraudulent inducement are that "(1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury." *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

### B.    FRAUDULENT INDUCEMENT

240.    Fraudulent inducement is a type of common-law fraud.

241.    Fraudulent inducement occurs when "[t]he plaintiff's 'reliance' on the false promise 'induces' the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise." *Int'l Bus. Machs. Corp.*, 573 S.W.3d at 228.

### C.    FRAUD BY CONCEALMENT OR OMISSION

242.    Fraud by concealment or omission typically arises when there is a fiduciary or confidential relationship between the parties.

243.    "The elements of fraud by omission are (1) the defendant failed to disclose material facts to the plaintiff that the defendant had a duty to disclose; (2) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (3) the defendant was deliberately silent when she had a duty to speak; (4) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was injured as a result of acting without that knowledge." *Frankoff v. Norman*, 448 S.W.3d 75, 84 (Tex. App. 2014).

**D.    FRAUD BY NON-DISCLOSURE**

244.    Fraud by non-disclosure can also occur when a duty to disclose arises from the relationship between the parties, such as between a buyer and seller.

245.    The elements of fraud by non-disclosure are: (1) a party fails to disclose a material fact within the knowledge of that party; (2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by failing to disclose that fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Custom Leasing, Inc. v. Tex. Bank & Trust Co. of Dallas*, 516 S.W.2d 138, 142 (Tex. 1974).

**E.    DEFENDANT'S CONDUCT CONSTITUTES FRAUDULENT INDUCEMENT, FRAUD BY OMISSION, AND FRAUD BY NON-DISCLOSURE**

246.    As alleged herein, Mosaic intentionally and knowingly misrepresented the terms of its loans to Plaintiffs and each member of the Class, *inter alia*, by concealing the existence, nature, or extent of dealer fees and by inaccurately calculating APR, thus concealing the true cost of borrowing.

247.    Mosaic also intentionally and knowingly misrepresented to Plaintiffs and each member of the Class the tax benefits that borrowers could claim as a result of their purchases and consumer financing.

248.    Mosaic had a duty to make accurate representations to Plaintiffs and each member of the Class concerning its loans, including the costs of said credit, and not to make promises,

including those related to tax benefits, known to it to be false.

249. This duty arises formally under both TILA and other laws, but even if this duty did not arise formally under TILA and other laws, it arises from the relationship between the parties and their unequal access to truthful information about the nature of Mosaic's loans, which was not available to Plaintiffs and the Class but was instead in Mosaic's sole possession.

250. Mosaic's misrepresentations were material to the contracts at issue in this action and to their formation. Plaintiffs and each member of the Class relied on Mosaic's representations, which were intended to and did have the effect of causing Plaintiffs and each member of the Class to accept Mosaic's loan offers and, consequently, suffer injury.

251. The facts that Mosaic failed to disclose to Plaintiffs and each member of the Class materially qualified the facts Mosaic did disclose and rendered Mosaic's disclosures likely to mislead.

252. Plaintiffs and each member of the Class were ignorant of the facts Mosaic failed to disclose and actively concealed, and Plaintiffs had no opportunity to discover the truth.

253. Mosaic intended to induce Plaintiffs and each member of the Class to rely on Mosaic's misrepresentations and omissions in evaluating and accepting Mosaic's loan proposals.

254. But for Mosaic's misrepresentations, failures to disclose, concealment, and omissions, Plaintiffs and each member of the Class would not have entered into a loan agreement with Mosaic because they would have understood Mosaic's loan terms to be predatory.

255. By these acts and omissions, Mosaic has committed fraud by non-disclosure and fraud by omissions or concealment and fraudulently induced Plaintiffs and each member of the Class to enter into contracts that they otherwise would not have entered.

## IX. NEGLIGENT MISREPRESENTATION (ON BEHALF OF PLAINTIFFS TRUJILLO, EVANS, AND EVANS AND THE TEXAS SUBCLASS)

256. Plaintiffs hereby incorporate paragraphs 1 through 135 of this pleading as if fully restated here.

257. Plaintiffs plead this ninth claim for relief in the alternative to their eighth claim for relief.

258.     The elements of negligent misrepresentation are (i) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest, (ii) the defendant supplies false information for the guidance of others in their business, (iii) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (iv) the Plaintiff suffers pecuniary loss by justifiably relying on the representation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

259.     Mosaic made false statements, *i.e.*, representations by, *inter alia*, presenting Plaintiffs and the Class with putative interest rates that failed to account for dealer fees and presenting APRs that failed to account for the real rate of interest.

260.     These statements were made in the course of Mosaic's business and in the course of a transaction in which it has a pecuniary interest because the company's business is making loans, such as those made to Plaintiffs and the Class, and Mosaic generates financial revenue from same.

261.     Further, Mosaic made these statements for the purpose of inducing Plaintiffs and the Class to rely on them in evaluating and accepting the loans that Mosaic offered.

262.     Plaintiffs were justified in relying on Mosaic's statements because, *inter alia*, consumers reasonably expect that creditors comply with all laws and regulations to which such creditors are bound and reasonably expect that the terms contained in a written contract are truthful.

263.     If Mosaic was not aware that its representations were false, then it was negligent in asserting them as true (and thereby making a false statement) because Mosaic lacked a reasonable basis for believing them to be true and failed to exercise reasonable care or competence in communicating accurate and truthful information.

264.     Mosaic lacked a reasonable basis for believing its statements to be true because its statements are inconsistent with its practices and internal documentation.

265.     Mosaic failed to exercise reasonable care or competence because any reasonably careful or competent lender would have investigated and disclosed its own documented practices and avoided communicating untruthfully.

266. As alleged herein, Plaintiffs and the Class were injured and suffered pecuniary loss, *i.e.*, were damaged, as a result of their reliance on Mosaic's negligent and false or inaccurate representations.

267. Accordingly, Mosaic has committed negligent misrepresentation and is liable to Plaintiffs and the Class for same.

## **PRAYER FOR RELIEF**

268. For the foregoing reasons, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

1. certification for this matter to proceed as a class action on behalf of the Class pursuant to Federal Rule of Civil Procedure 23;

2. appointment of the Plaintiffs as representative of the Class;

3. appointment of counsel for Plaintiffs as Lead Counsel for the Class;

4. a finding that Mosaic's practices are in violation of state consumer protection statutes;

5. a finding that Mosaic's practices are in violation of state common law;

6. restitution of all amounts improperly paid to Mosaic by Plaintiffs and the members of the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

7. disgorgement of profits in an amount to be determined at trial;

8. actual damages in an amount according to proof;

9. statutory damages as allowed by law;

10. rescission;

11. an award of pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

12. an award of costs and attorneys' fees under the common fund doctrine and all other applicable law; and

13. declaratory and injunctive relief.

269. Plaintiffs also request such other relief as this Court deems just and proper.

# **DEMAND FOR JURY TRIAL**

270.   Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.


Dated: July 5, 2024                    Signed: _[signature]_____

Michael Montaño (Cal. Bar No. 282419)
**GUERRA LLP**
345 California Street, Suite 600
San Francisco, California 94104
(210) 447-0500
mmontano@guerrallp.com

Frank Guerra (*Pro Hac Vice* Pending)
**GUERRA LLP**
875 East Ashby Place, Suite 1200
San Antonio, TX 78212
(210) 447-0500
fguerra@guerrallp.com

Clayton Smaistrla (*Pro Hac Vice* Pending)
**SAUCIER & SMAISTRLA PLLC**
200 Concord Plaza Drive, Suite 750
San Antonio, Texas 78216
(210) 901-8112
clayton@s2lawfirm.com

*Attorneys for Plaintiffs and the Putative Class*